**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DOROTHY TOLBERT, | ) | |
| | ) | JURY DEMANDED |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| ELITE HOME HEALTH CARE, INC., | ) | Judge: |
| | ) | |
| Defendant. | ) | Magistrate Judge: |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Dorothy Tolbert ("Plaintiff") complains against Elite Home Health Care, Inc.

("Defendant") as follows:

### Nature of the Case

1. The causes of action for the Plaintiff arises under 42 U.S.C. § 2000 *et seq.*

### Jurisdiction and Venue

2. This Court has jurisdiction over this matter based upon 42 U.S.C. § 2000 *et seq.* and 28

   U.S.C. § 1331.

3. Venue is proper in the Northern District of Illinois. The claims for relief arose in this

   State as required by 42 U.S.C. § 2000 *et seq.*

4. Plaintiff has completed all conditions precedent with respect to her claims herein

   against Defendant.

5. On approximately February 11, 2013, Plaintiff filed Charge No. 440-2013-02044

   against Defendant for sexual harassment and constructive discharge, *See* Charge No.

   440-2013-02044, attached hereto and incorporated herein as Exhibit A.

6. Plaintiff has completed all conditions precedent with respect to her claims herein against Defendant.

7. On May 12, 2014, the EEOC issued a Notice of Right to Sue letter pertaining to Charge No. 440-2013-02044. *See* Notice of Right to Sue Letter re Charge No. 440-2013-02044, attached hereto and incorporated herein as Exhibit B.

## Parties

8. Plaintiff is a female and a resident of Indiana.

9. At all times relevant herein, Plaintiff worked for Defendant in Illinois.

10. Defendant is an Illinois corporation.

11. In approximately October 2011, Defendant hired Plaintiff as a Licensed Practical Nurse ("LPN").

12. At all times relevant herein, Defendant was engaged in an industry affecting commerce. At all times relevant herein, Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

13. Defendant conducted business and operated out of its facility at 564 South Washington Street, Suite 200, Naperville, Illinois 60540.

## General Allegations

14. In approximately October 2011, while at work, one of Plaintiff's patients, Michael Newell ("Newell") began to harass Plaintiff.

15. Beginning in approximately October 2011 and continuing through May 2012, Newell told Plaintiff and other nurses that he wanted to see Plaintiff naked.

16. Beginning in approximately October 2011 and continuing through May 2012, Newell told Plaintiff that he had sexual desires for her and wanted to have a relationship with her.

17. Beginning in approximately October 2011 and continuing through May 2012, Newell told Plaintiff and other nurses that he wanted to see Plaintiff's underwear.

18. During Plaintiff's employment with Defendant, Newell asked Plaintiff to "wear tighter fitter clothing."

19. During Plaintiff's employment with Defendant, Newell told another nurse to ask Plaintiff to take a "picture of herself naked."

20. Beginning in approximately October 2011 and continuing through May 2012, Newell grabbed Plaintiff's buttocks.

21. On multiple occasions approximately between October 2011 and May 2012, Newell said, "Let me see it" and "I won't tell anybody if you give me some" to Plaintiff.

22. On multiple occasions approximately between October 2011 and May 2012, Plaintiff informed Ashley LNU (last name unknown), Defendant's staffing coordinator and an agent of Defendant, that Newell was being inappropriate and that his comments and actions were offensive and unwelcome.

23. In approximately December 2011, Plaintiff complained about the harassment to her staffing coordinator, Ashley LNU.

24. Ashley LNU ignored Plaintiff's complaint and the sexual harassment continued.

25. In approximately January 2012, Plaintiff complained again to Ashley LNU, telling her that the harassment had continued and that it had escalated to inappropriate touching. During this conversation, Plaintiff asked to be transferred to another patient.

26. Ashley LNU said that she would try to find Plaintiff another patient, but did not do so.

27. In approximately February 2012, Plaintiff complained again to Ashley LNU about the ongoing sexual harassment.

28. In approximately April 2012, Newell swiped his hand along Plaintiff's vagina and then smelled it.

29. Plaintiff always refused Newell's sexual advances and requests toward Plaintiff, and such statements and conduct were unwelcome and offensive.

30. In approximately April 2012, Plaintiff complained again to Ashley LNU. Ashley LNU stated to Plaintiff that Ashley LNU would contact James LNU, Plaintiff's direct supervisor, and James LNU would contact Plaintiff.

31. In approximately April 2012, Plaintiff and James LNU discussed Newell's unwelcome and offensive statements and conduct.

32. After Plaintiff's and James LNU's April 2012 discussion concerning Newell's unwelcome and offensive statements and conduct, James LNU did not conduct any investigation or take any remedial actions.

33. In approximately early-June 2012, Plaintiff and Ashley LNU again discussed Newell's aforesaid actions.

34. In approximately early-June 2012, Plaintiff and Ashley LNU also discussed the fact that Newell was sending text messages to other nurses at Defendant, including Plaintiff's daughter, stating "I want to see [Plaintiff's] underwear" and "I want to marry [Plaintiff]."

35. In approximately early-June 2012, Plaintiff informed Ashley LNU that, due to Newell's persistent offensive conduct and Defendant's refusal to remedy Plaintiff's workplace, Plaintiff was resigning.

36. In approximately June 2012, due to the ongoing and continuing sexual harassment, Plaintiff had no other choice but to resign from Defendant.

37. In approximately early-July 2012, Defendant offered a short-lived and temporary assignment to a different patient.

38. In approximately February 2013, Ashley LNU asked Plaintiff to return to work in order to work with Newell again. Plaintiff refused.

39. Despite Plaintiff's repeated complaints and refusals of Newell's sexual advances, Defendant ignored Plaintiff's complaints and refused to take remedial measures.

## Count I – Complaint of Plaintiff for Sexual Harassment Against Defendant

40. Plaintiff realleges and incorporates paragraphs 1 through 39 into this Count I.

41. Count I is being brought pursuant to Title VII against Defendant.

42. During her employment with Defendant, Plaintiff performed her assigned work tasks in a satisfactory and conscientious manner in accordance with Defendant's standards.

43. Plaintiff was subjected to sexual harassment by Newell, which included sexually offensive comments, sexual solicitations, references to sexual acts, and the inappropriate touching of Plaintiff's buttocks and vagina.

44. The aforesaid actions by Newell were unwelcome and extremely offensive.

45. The offensive conduct created an objectively hostile and intimidating work environment for Plaintiff.

46. Defendant condoned the sexual harassment of Plaintiff and failed to maintain a harassment-free work environment by failing to transfer Plaintiff and by failing to address Newell's harassing behavior.

47. As a direct result of these failures by Defendant, Newell continued to sexually harass and engage in otherwise offensive conduct toward Plaintiff.

48. Defendant's treatment of Plaintiff was recklessly and callously indifferent to Plaintiff's legally protected rights.

49. The sexual harassment that Plaintiff was subjected to at the hands of Defendant, its agents, representatives, and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile work environment for Plaintiff.

50. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered harassment, the invasion of the right to be free from harassment, great humiliation, and emotional distress.

51. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful embarrassment among her friends, colleagues, and coworkers, damage to her reputation, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff Dorothy Tolbert respectfully requests this Honorable Court to provide the following equitable and legal remedies:

a) Advance the case on the docket, order a speedy hearing at the earliest practicable date, and cause this case to be expedited in every possible way;

b) Order a permanent injunction prohibiting Defendant from further acts of sexual harassment;

c) Award Plaintiff all costs of litigation, including reasonable attorneys' fees and expert fees and expenses;

d) Award Plaintiff a judgment against Defendant for lost employment benefits, frontpay, backpay, punitive damages, and other compensatory damages;

e) Award Plaintiff pre-judgment interest;

f) Enter an order requiring Defendant to implement effective steps to eliminate sexual harassment from Defendant's workplaces; and

g) Grant such other and further relief as this Honorable Court deems just and proper.

### **Count II – Complaint of Plaintiff for Constructive Discharge Against Defendant**

52. Plaintiff realleges and incorporates paragraphs 1 through 51 into this Count II.

53. Count II is being brought pursuant to Title VII against Defendant.

54. Plaintiff was subjected to debilitating sexual harassment during her employment with Defendant.

55. Despite Plaintiff's complaints to her supervisor, Defendant continued to subject her to egregious and persistent sexual harassment.

56. The egregious and persistent sexual harassment interfered with Plaintiff's ability to perform her job duties to the best of her ability and live her everyday life.

57. Defendant had ample notice of, and condoned, the intolerable working conditions experienced by Plaintiff.

7

58. Defendant took no actions to end the harassment.

59. No reasonable-minded person would or could continue to work for Defendant in light

of the aforementioned harassment.

60. Defendant's treatment of Plaintiff was recklessly and callously indifferent to Plaintiff's

legally protected rights.

61. As a direct result of the accumulation of Defendant's actions, Plaintiff believed that she

could no longer support her well-being while being subjected to such sexual

harassment, and could no longer continue to work effectively in such an environment.

62. In approximately early-June 2012, Plaintiff was forced to end her employment with

Defendant due to the debilitating harassment.

WHEREFORE, Plaintiff Dorothy Tolbert respectfully requests this Honorable Court to

provide the following equitable and legal remedies:

a) Advance the case on the docket, order a speedy hearing at the earliest practicable

date, and cause this case to be expedited in every possible way;

b) Order a permanent injunction prohibiting Defendant from further acts of harassment,

discrimination, and retaliation;

c) Award Plaintiff all costs of litigation, including reasonable attorneys' fees and expert

fees and expenses;

d) Award Plaintiff a judgment against Defendant for lost employment benefits, frontpay,

backpay, punitive damages, and other compensatory damages;

e) Award Plaintiff pre-judgment interest;

f)   Enter an order requiring Defendant to implement effective steps to eliminate

harassment, discrimination, and retaliation from Defendant's workplaces; and

g)   Grant such other and further relief as this Honorable Court deems just and proper.

**Jury Demand**

Plaintiff hereby demands a trial by jury.

Respectfully Submitted,
Dorothy Tolbert,

/s/ Franklin Z. Wolf
One of Her Attorneys

Uche O. Asonye – 6209522
Franklin Z. Wolf – 6301208
Asonye & Associates
100 N. LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110